ENTERED 8-10-07
FILED
AUG 10 2007
CLERK U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

In re

THE ROMAN CATHOLIC BISHOP OF SAN DIEGO, a California corporation sole,

Debtor.

Case No. 07-00939-A11

ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE DISMISSED
11 U.S.C. §1112(b); 11 U.S.C. § 305(a); 11 U.S.C. § 105(a)

Date: September 6, 2007
Time: 10:00 a.m.
Dept.: Courtroom 2

TO: DEBTOR AND ITS COUNSEL; AND OTHER INTERESTED PARTIES AND THEIR COUNSEL:

YOU AND EACH OF YOU are hereby notified that on September 6, 2007, at 10:00 a.m. in Dept. 2 of the United States Bankruptcy Court, 325 West F Street, San Diego, California, a hearing will be held on the Court's Order to Show Cause Why Case Should Not Be Dismissed.

Grounds for the motion are as more fully set forth in the First Report of Expert R. Todd Neilson, CPA, filed on July 30, 2007, its accompanying exhibits and appendices (docket entry [hereafter "d.e."] #850, #853 and #855); and the Schedules

and Statement of Financial Affairs ("SOFA") filed by the Diocese (d.e. #3, #281, #282). Specifically, the Court cites the following:

I.

1. The Cash Management Order of the Court is not being followed:

    a. The Handbook- Diocese of San Diego ("Handbook") is a detailed and comprehensive guide for administration of the San Diego Diocese and its Parishes, covering subjects such as structure of the Diocese, financial management policies of the Diocese and Parishes, personnel policies, ministry, liturgy, etc. Parishes are not abiding by the Handbook requirement that states:

> Parishes are required to deposit with the diocese (i.e. in the "Diocesan Bank") all parish funds, including those generated and/or held for the benefit of parish operations, organizations, projects or programs over and above funds needed for normal daily business. This policy also applies to parochial schools and Diocesan high schools...
>
> (1) "Funds needed for normal daily business" is defined as the normal operating expenses for a two-month period, which for most parishes is approximately $50,000.

Expert's Report ("E.R.") p. 127:8-18; Appendix A (d.e. #855, Pt. 1, Admin., Parish, Section 1, p.38)

    b. Parishes are not abiding by the Handbook requirement which states:

> Parish related organizations should reconcile their bank accounts on a timely basis and the reconciliation and bank statements (or copies thereof) should be kept in the parish office.

E.R., p. 138:14-22; Appendix A (d.e.#855, pt. 3, p. 53)

    c. Some Parishes are actively and deliberately hiding assets from the Diocese or inappropriately designating donations as restricted to circumvent or evade the direction of the Diocese and/or the Court.

    E.R., pp. 53-60; p. 158:7-28 and pp.159-162; p. 163:6-28, pp. 164-166.

/ / /

/ / /

1      d. Post-petition, the Diocese has been lax, ineffective or indifferent to obtaining compliance by Parishes with Handbook requirements. There is no evidence of proactive conduct by Diocese to enforce the Handbook policies. There is an absence of accounting controls or supervision by the Diocese over the Parishes. Accordingly, it appears the financial controls and transparency normally required for entities in bankruptcy cannot be achieved.

     E.R., p. 36:14-28, 37:1-8; p. 45:7-21; p. 48:25-27, p. 49:1-12; p. 133:1-16; p. 138:13-25; p. 172:23-25, p. 173, p. 174:1-16.

2. The Diocese has failed to properly account for all of its property. Specifically,

     a. Land held in the name of the Roman Catholic Bishop of San Diego–regardless of whether it is claimed to be held in trust for Parishes–is not accounted for on either the books of the Diocese or the books of the Parishes.

     E.R. p. 109:1-7.

     b. Bank accounts have not been fully disclosed on the Diocese's bankruptcy schedules, or the amended schedules which were filed pursuant to this Court's order following the OSC.

     E.R. p. 52:1-28; p. 136:15-28, p. 137, p. 138:1-11.

3. Diocese has persisted in reporting its assets at assessed valuation, rather than fair market value as required by all debtors in bankruptcy proceedings. (d.e.. # 3; d.e. #281).

4. Diocese failed to disclose material facts to the Court with respect to the operation of its cash management system when it sought expedited approval to continue use of this system in its First Day Motion, (d.e #. 9). Specifically,

/ / /

/ / /

a. Diocese failed to disclose that it had not created a segregated account for Parish funds on deposit but rather had commingled all funds in the Pastoral Center Main Checking Account (a/k/a the Diocesan Bank) on the date of filing the bankruptcy petition.

E.R. pp. 76-79

b. Diocese failed to disclose that the Parish School Deposit & Loan ("PSDL") Trust Checking Account did not exist on the petition date. Rather, the PSDL account was first created post-petition on or about March 23, 2007 and Parish monies then transferred to it. Previous to its creation and on the date of filing the bankruptcy, the monies of the Parishes were commingled and held in the Pastoral Center Main Checking Account. However, the Diocese represented in its SOFA and the Declaration of Christopher Linscott affirmatively implied that the PSDL Trust Checking Account existed pre-petition and was not part of the normal cash management system of the Diocese.

E.R. pp. 23-24; pp. 80-83. *Compare* Linscott Reply Declaration filed April 6, 2007 (d.e. # 224), p. 5:8-28 and SOFA (d.e. # 3), pp. 55-59.

c. Diocese failed to disclose in any documents filed with this Court that prior to filing its bankruptcy, it had represented to its auditors and in its audited financial statements provided to third parties that the Diocese owned the funds now deposited in the PSDL Trust without any restrictions or maintenance of the assets in trust.

E.R. p. 29:21-28, pp. 30-33, p. 34:1-4; pp. 104-107.

///

## II.

Applicable law:

11 U.S.C. § 1112(b)(1) provides in relevant part:

[T]he court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if movant establishes cause:

.......

(4) For purposes of this subsection, the term "cause" includes–

    (B) gross mismanagement of the estate;

......

    (E) failure to comply with an order of the court;

    (F) unexcused failure to satisfy timely any...reporting requirement established by this title or by any rule applicable to a case under this chapter;...

11 U.S.C. § 305(a) provides in relevant part:

  (a) The court, after notice and hearing, may dismiss a case under this title,... at any time if–

(1) the interests of creditors and the debtor would be better served by such dismissal....

11 U.S.C. § 105(a) provides in relevant part:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

/ / /

/ / /

### III

Responses, if any, to this Order to Show Cause shall be filed and served on interested parties no later than August 27, 2007. Replies to Responses shall be filed and served on interested parties no later than September 4, 2007 at 12:00 p.m. (noon).

Dated: 10 Aug 07

*Louise De Carl Adler*
LOUISE DE CARL ADLER, Judge

CAD 168
[Revised July 1985]

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Case No. 07-00939-A11
Case Name: THE ROMAN CATHOLIC BISHOP
OF SAN DIEGO, et al.

## CERTIFICATE OF MAILING

The undersigned, a regularly appointed and qualified clerk in the Office of the United States Bankruptcy Court for the Southern District of California, at San Diego, hereby certifies that a true copy of the attached document, to-wit:

**ORDER TO SHOW CAUSE WHY CASE
SHOULD NOT BE DISMISSED**

was enclosed in a stamped and sealed envelope and mailed to the following parties at their respective addresses listed below:

**[SEE ATTACHED LIST]**

The envelope(s) containing the above document was deposited in a regular United States mail box in the City of San Diego in said district on August 10, 2007.

_____      _____Roma London_____,
CAD 168                       Roma London, Deputy Clerk

- 8 -

Case No. 07-00939-A11
Case Name: THE ROMAN CATHOLIC BISHOP
OF SAN DIEGO, et al.

| | |
|---|---|
| SUSAN G BOSWELL, ESQ<br>QUARLES & BRADLEY<br>ONE SOUTH CHURCH AVE STE 1700<br>TUCSON AZ 85701-1621 | JAMES STANG ESQ<br>STANG & WEINTRAUB<br>10100 SANTA MONICA BLVD<br>11TH FLOOR<br>LOS ANGELES CA 90067-4100 |
| GERALD P KENNEDY ESQ<br>PROCOPIO CORY HARGREAVES<br>  & SAVITCH<br>530 B STREET STE 2100<br>SAN DIEGO CA 92101 | HAMID RAFATJOO ESQ<br>10100 SANTA MONICA BLVD<br>SUITE 1100<br>LOS ANGELES CA 90067 |
| VICTOR VILAPLANA ESQ<br>402 WEST BROADWAY STE 2100<br>SAN DIEGO CA 92101 | STEVEN KATZMAN ESQ<br>TIFFANY CARROLL ESQ<br>OFFICE OF THE U S TRUSTEE<br>402 WEST BROADWAY STE 600<br>SAN DIEGO CA 92101 |

- 8 -