James I. Stang (CA Bar No. 94435)
Robert B. Orgel (CA Bar No. 101875)
PACHULSKI STANG ZIEHL YOUNG JONES &
WEINTRAUB LLP
10100 Santa Monica Blvd.
11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: jstang@pszyjw.com; rorgel@pszyjw.com

Counsel for Official Committee of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>THE ROMAN CATHOLIC BISHOP OF<br>SAN DIEGO, a California corporation sole,<br><br>Debtor | Case No.: 07-00939-LA11<br><br>Chapter 11<br><br>**COMMITTEE'S <u>REPLY</u> MEMORANDUM IN SUPPORT OF TORT LITIGANTS' REMAND AND/OR ABSTENTION MOTIONS - DEBTOR <u>IS</u> A DEFENDANT**<br><br>Date:    August 23, 2007<br>Time:   10:00 a.m.<br>Place:  Dept. 2, Rm. 118<br>          325 West "F" St.<br>          San Diego, CA 92101 |

The Official Committee of Creditors Holding Unsecured Claims ("Committee") hereby replies in support of the state court plaintiffs' remand / abstention motions.

## I.

## INTRODUCTION

The remand of the subject 42 clergy sex abuse suits (the "Actions") will advance the resolution of this chapter 11 case in the most efficient method possible. State court trials produce settlements. The state court has substantial trial experience in clergy sex abuse litigation and the risk of trial has resulted in the settlement of hundreds of clergy abuse cases. Since 2003, the state court has put in place a consolidated pretrial and appellate structure ensuring efficiency and continuity. An extensive body of state law has developed which provides uniformity for all parties. All of these

advantages will be lost if remand is denied.

The disadvantages claimed by the debtor (the "Debtor") are nonexistent. The automatic stay and a reorganization plan provide an orderly means of satisfying verdicts without prejudice or discrimination towards any creditor or plaintiff. The insurance companies are paying the defense bills and there is no dissipation of estate assets in fees and costs. Mediation with Judge Papas can continue, even in conjunction with expert state court mediation judges. Jury rights are preserved. Group trials are possible. There is no undue delay.

Although the Debtor can pay creditors in full, its strategy is to reduce the clergy sex abuse claims below what applicable state law would dictate. The Orange County Diocese settled clergy sex abuse claims for an average of roughly $1.15 million per plaintiff and the Los Angeles Archdiocese (the "L.A. Archdiocese") settled 508 cases for an average of roughly $1.3 million per plaintiff. The Debtor instead filed chapter 11 and offered an average of $600,000 per plaintiff.

The Debtor opposes remand to reduce the amount of Survivors' legitimate claims. It hopes that a change of trial venue from state to federal court will "throw off" state court counsel's ability to evaluate claims. In addition, it is seeking estimation (available only in District Court) to eliminate Survivors' jury trial rights. These strategic ploys are unfortunately consistent with the Debtor's entire approach to its chapter 11 as a tool for its use to reap benefits without burdens. Such an attitude is apparent in the wrongful conduct identified in the auditor's report as to which the Bankruptcy Court issued its "Order to Show Cause Why Case Should Not Be Dismissed" (Docket No. 952). Seeking to take improper advantage of the federal system while ignoring fundamental bankruptcy procedures and court orders cannot be permitted. The motions should be granted.

## II.

## FACTUAL BACKGROUND[1]

Judge Fromholz, the state court coordination judge, had released more than 60 Clergy II cases for trial by the day of Debtor's bankruptcy filing. After the cases' release, the Debtor filed hundreds of pages of pleading challenges that attacked Cal. Code Civ. Pro. § 340.1 on constitutional

---

[1] As to the relevance of the asserted constitutional law defenses and the L.A. Archdiocese's settlement, the Committee incorporates by reference and/or requests that the Court afford judicial notice to the declaration of Irwin Zalkin filed in opposition to withdrawal of reference, filed August 1, 2007 as docket number 864.

grounds, advanced various statutory bases for dismissal and attacked each of the causes of action. The Debtor adopted the argument that the revival of previously time-barred claims was facially unconstitutional and violative of due process guarantees. The state trial court rejected those arguments and similar arguments were rejected in the The Clergy Cases III. The Debtor filed three separate writ petitions to the California Second District Court of Appeal. Each was summarily denied. In one of such petitions, the designated appellate panel for the Clergy Cases cited both state and federal authorities supporting the facial constitutionality of the revival of time-barred civil claims. *See Roman Catholic Bishop of Oakland v. Superior Court*, 128 Cal.App.4th 1155, 1161-62 (2005).

Moreover, the Debtor's arguments that Cal. Code Civ. Pro. § 340.1 may unconstitutionally deprive the Debtor of due process *as applied* in certain cases also has been rejected by the trial court presiding over the Clergy Cases I and II. Further, as the issue of constitutionality *as applied* relates to whether sufficient evidence now can be gleaned as to past conduct, it is relevant that on at least two occasions (as cases have approached trial), sufficient evidence demonstrating "notice" and a cover-up has been discovered to justify the plaintiff's pursuit of punitive damages.

On the eve of a 14-plaintiff group trial the L.A. Archdiocese announced its $660 million settlement. On the eve of four trials against it involving three serial perpetrators, the Debtor stalled any resolution by filing its chapter 11. Trial in the Rister case was set to commence on February 28, 2007 and in the Mary Ann M. case was set to follow immediately thereafter (with the same defense firm). Michael S., a Kraft case, was set for trial on April 3, 2007; and, John Role 17, a Rodrigue case, was set for trial on June 1, 2007.

### III.

### ARGUMENT

Predictability will enhance settlement prospects and remand to the state courts will assure Plaintiffs that their claims will be valued in the most predictable manner available through courts where most of the cases have been pending for at least 3 years, where one mid-level appellate panel has been assigned, where the involvement of judges who already have experience with these abuse cases will continue, and where there is experience with group clergy case trials.

To justify their bald attempt to increase their bargaining leverage, the objecting parties make a variety of spurious arguments. The Debtor's repeated assertions about depletion of the estate make no sense; insurance is paying defense costs. Of course, state courts can address alleged constitutional challenges and mediation can continue regardless of remand. Trials have a history of encouraging settlement; estimations do not. (The L.A. Archdiocese settlement on the eve of trial proves that trial preparation and setting does not preclude, but encourages settlement.) In all, the factors favoring remand meet or surpass the applicable standard. The motions should be granted.

A.   The Benefits of Remand Are Substantial and Are More Than Sufficient Under Any Standard.

The Actions should be remanded for cause. District court trials would be inefficient, burdensome, and impractical, usurp California's interest and investment of resources in this litigation and, significantly, be inequitable to the plaintiffs. The standard for granting remand does not become higher for personal injury tort or wrongful death cases. *In re Roman Catholic Archbishop of Portland in Oregon*, 338 B.R. 414, 420 (Bankr. D. Ore. 2006) ("*Portland Diocese*").

The relevant factors favor remand. *see Hopkins v. Plant Insulation Company*, 349 B.R. 805, 813 (N.D. Cal. 2006); *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166-67 (9th Cir. 1990). Remand does serve efficiency and avoid disparate rulings in like cases. The settlement by the L.A. Archdiocese did not end the benefits of the state coordinated proceedings. One panel of appellate judges still hears appeals from the Clergy Cases. Judge Fromholz remains coordination judge and will resolve pre-trial matters. The past and future rulings in state court in these remaining Clergy Cases, and the history of rulings in prior Clergy Cases together with the continuity of procedural rules, would make prosecution of the Actions in state court more efficient and uniform. Discovery and evidentiary disputes and many other pretrial matters have been, and can expect to be, raised in these cases. If in federal courts, only the discretionary 'law of the case' doctrine would recommend against reconsideration of prior rulings and no state court coordination order would have any impact. In the state courts, Judge Fromholz continues to have a role in these cases and his prior decisions provide predictability to litigants. Further, the coordination procedures giving Judge Fromholz the role of deciding pre-trial matters should make less likely reconsideration of his rulings during trial. The Clergy Cases II coordination remains beneficial because Clergy II includes not only the

removed cases against the Debtor and those against the San Bernardino Diocese, but also other non-removed cases against only the San Bernardino Diocese. The declarations submitted by the Debtor support the Committee's point. Each declaration makes the point that the Clergy Child Sex Abuse cases are factually intensive and that trial preparation will be prolonged. They thus establish that the efficiencies achievable from state court coordination would be meaningful.

Moreover, the experience and history of group trials in state court also favor remand. The state courts have a history of and experience in utilizing them when appropriate. Group trials occurred in Northern California and were scheduled in Los Angeles (and led to the $1.3 million per plaintiff average settlement with the L.A. Archdiocese). Even ignoring for now the other 86 cases, of the 42 cases for which remand motions now are being heard, the movants declarations reflect that Fr. Rodrique is the perpetrator in 18 cases (involving 22 plaintiffs) and Fr. Robier is the perpetrator in 12 cases involving 16 plaintiffs. While these two serial perpetrators alone account for over 70% of these 42 cases, there are other serial perpetrators in such cases as well, such as Monsignor William Kraft.[2] Judge Bloom of the San Diego Superior Courts had suggested the possibility of using group trials for the cases against the Debtor (*see* Declaration of Andrea Leavitt).

The prior trial preparation against a serial perpetrator will shorten the time needed and allowed as to other cases against such perpetrator. The declaration of Maria Roberts is offered to counter the intuitive (and correct) notion that taking the depositions of all the persons related to a serial perpetrator for one case will shorten the time for preparation of future cases. In all cases, the Debtor will want to take discovery to verify the factual story being told by the plaintiff. To the extent the Debtor's discovery includes checking to see if there is similar testimony of other victims, the trial preparation in one serial perpetrator case should reduce the discovery needed in subsequent cases. In cases brought by persons over 26 years of age, plaintiffs may seek discovery to show that a non-perpetrator defendant had knowledge of the perpetrator's proclivities. Discovery undertaken in a serial perpetrator case should be relevant to and reduce the discovery on this issue in a subsequent

---

[2] The very fact that such a high percentage of the cases against the Debtor involve serial perpetrators may explain why the plaintiffs believe the value of the cases against the Debtor is higher than the statewide average. The notice defenses of the Debtor generally are strongest where the provable facts by the plaintiff do not include showing a prior history of abuse. Thus, not only may the conduct of some serial perpetrators be more devastating and extreme, but the notice defense may be weaker where serial perpetrators are involved and prior abuse is easier to show.

case against the same perpetrator. While the prior work may not eliminate all discovery needs, the utility of prior discovery would shorten trial preparation schedules. For the Haggenbach 14-plaintiff trial, which was to have commenced in July 2007 (and which led to the L.A. Archdiocese settlement), the Court set the trial date in January 2007. With six months afforded for a 14-plaintiff group trial, even less time should be expected for smaller trials.

The pre-trial management and trial of these 127 cases will be a burden on any court undertaking them. But those burdens are increased for courts without prior experience in these unique cases. Despite the Debtor's attempts to distinguish *Portland Diocese*, where personal injury cases seeking only compensatory damages were remanded and where the court rejected the Debtor's argument that a federal forum would be more efficient, here, like there, on balance "the advantages of the state court outweigh the debtor's arguments in favor of the federal forum." 338 B.R. at 419.

The Debtor's reliance on *In re Pan American Corp.*, 950 F.2d 839 (2d Cir. 1991) ("Pan Am") is misplaced for the proposition that abstention is the exception and not the rule. No Ninth Circuit court has cited it in support of that suggestion. A close reading of Pan Am reveals that it relies on secondary sources that do not support the Second Circuit's holding. The airline filed bankruptcy after the Lockerbie tragedy and the ensuing litigation. The personal injury plaintiffs divided into two groups: passengers and crew. The passengers' claims were governed by the Warsaw Convention, which raised federal law and preempted state law thereby obviating any consideration of comity. (The court also cited a set of cases holding that where the state law was unsettled, the federal court, in the interest of comity, should abstain to allow the state courts to sort it out themselves.) As to the crew members' claims, which were not covered by the Warsaw Convention, the Second Circuit held that the district court did not abuse its discretion in abstaining because those claims raised no preemption issue. This different treatment of the two kinds of claims underscores that preemption drove the analysis. In this case, state law is not preempted by federal law. See, *In re Apex Oil Company*, 980 F.2d 1150, 1153 (8th Cir. 1992) (Pan Am decision driven by federal preemption). Therefore, under Pan Am, abstention would be perfectly appropriate.[3]

---

[3] The Second Circuit also overturned the District Court's abstention because it discounted the District Court's jurisdictional concerns about transfers of the removed personal injury cases between the Southern and Eastern Districts of New York and the implication that removal of the personal injury cases turned on whether removal facilitated the bankruptcy court's control of the chapter 11 case.

The Second Circuit acknowledged that "section 157(b)(5) has *consistently* been construed to recognize discretion in district courts to leave personal injury cases where they are pending." Pan Am, 950 F.2d at 844 (emphasis added; quotations omitted). The so-called rule that abstention is the exception is based on out-dated citations to Collier's on Bankruptcy and a misconstruction of Aaron, Bankruptcy Law Fundamentals. It cited Collier as saying, "The district court, if it elects to abstain and have the claim liquidated in state court, may be contravening the legislative history." Since 1991, however, when Pan Am was decided, Collier has tempered this comment and now says that Congress intended district courts to try personal injury tort claims *if* the only bases for abstention are the mandatory abstention grounds. If, however, the basis for abstention is one of the discretionary abstention grounds, as is the case here, courts "*retain* their discretion to abstain from trying PITWD claims." 1 Collier on Bankruptcy para. 3.06[3], at 3-82 (15th rev. ed. 2004) (emphasis added). Collier then cites Pan Am's "admonishment" that abstention should be the exception not the rule. Thus, neither Collier nor Pan Am cites any independent authority for the broad proposition that Congress did not intend district courts to abstain from hearing PITWD claims. Instead, they rely on each other for this proposition.

Pan Am also quotes Aaron, "The apparent intent [of section 157(b)(4) is that these personal injury claims should not be returned to the state courts for trial"). 950 F.2d at 845. The full quote, attached as **Exhibit "A"** makes a different point. Its point is that only the district court should estimate personal injury claims and not the state court. The Committee does not disagree with that point. However, the dispute here is whether the cases should be remanded for trial; not whether the state court should be able to estimate the claims. *See In re White Motor Credit*, 761 F.2d 270, 277 (6th Cir. 1985) ("[T]he district court has the authority to leave tort cases in the courts in which they are pending for liquidation there."), cited with approval by Pan Am 950 F.2d at 844.

Only one Ninth Circuit case, *Tuli v. Republic of Iraq (In re Tuli),* 172 F.3d 707 (9th Cir. 1999) uses the "abstention is the exception, not the rule," language. In *Tuli*, an involuntary debtor sued Iraq for turnover of property. The bankruptcy court dismissed the case on jurisdictional grounds and alternatively abstained from deciding the adversary proceeding based on the "interests of justice." The Ninth circuit overruled this decision because the bankruptcy court based its decision

solely on the fact that the transaction at issue occurred in Iraq. The Court said that this fact, standing alone, and without any explanation from the bankruptcy court was insufficient. Notably, *Tuli* did not involve a removed state court action. Reading between the lines, the Court may have been concerned that the debtor did not have any state court remedy remaining if the Bankruptcy Court abstained from hearing a Bankruptcy Code turnover action brought 15 years after the property was delivered to Iraq. Thus, the *Tuli* case is readily distinguishable from this case.

Here, the weight of factors strongly favors remand. While resolution of the Actions may be important to the Debtor, such factor is irrelevant. In *Tucson Estates*, the Ninth Circuit, pointing to the six-year length of pendency of the state court matter, its mature trial status, and the predominance of state law issues, held that stay relief and abstention as to state court actions was appropriate even though the property disputes at issue there would have a dramatic effect upon the debtor's estate. 912 F.2d at 1167-69.

**B.    The Ever-Unsuccessful, Constitutional Defenses Can Be Addressed By The State Courts And Are Not Particularly Complex.**

Attaching the "constitutional law" label to the Debtor's defenses does not make the issues complex or outside the state court's purview. The Debtor repeatedly has lost on these tired arguments in state court. Nonetheless, the Debtor posits a need for the district court to consider them again. Neither the facts nor law support this contention.

As courts of general jurisdiction, state courts regularly hear federal constitutional issues. The Debtor claims that the revival denies it due process due to the passage of time. Such a claim is hardly complex and similar claims made by other Roman Catholic institutions have been repeatedly rejected by every court that has heard them. In fact, Debtor's arguments that the revival of previously time-barred claims is facially unconstitutional and violative of constitutional due process guarantees were rejected in this District in *Melanie H. v. Doe 1*, Case No. 04-CV-1596 WQH (JFS) (Petition for Writ of Mandate rejected by Ninth Circuit).

**C.    A Case-By-Case Estimation Process That Cuts Off The Plaintiffs' Statutorily Protected Constitutional Jury Trial Rights Is Inappropriate And Unnecessary, But Is Not Inconsistent With Remand.**

The Debtor seeks estimation to cause plaintiffs more uncertainty regarding their claims'

values so that Plaintiffs will to agree to allowance of their claims in amounts lower than applicable state law would dictate. Since the Debtor has not proposed an estimation protocol, one would be hard pressed to say that estimation is a better or "needed" process.

The Debtor referred to the draft estimation motion attached to its withdrawal of reference motion. One certainty is that the Debtor wants to use estimation to avoid a jury trial. (Draft Estimation Motion, p. 4, lines 4-10.) In *In re Dow Corning Corp.*, 211 B.R. 545, 569-70 (Bankr. E.D. Mich. 1997), Judge Spector rejected cross-estimation motions finding that the time to go to trial in the thousands and thousands of cases at issue there would not be "undue" and that any benefits of estimation would not outweigh the detriments of "cut[ting] the heart out" of the statutorily protected Seventh Amendment jury trial rights. Here, the state courts do not confront thousands of cases and the state court judges, at the insistence of the Debtor, created efficient procedural mechanisms when initially confronted with slightly more than a thousand cases statewide. Thus, permitting jury trials to determine Survivor's claims would not result in undue delay.

Moreover, estimation is not an all or nothing proposition. The Court could remand the 42 Actions and grant relief from stay as to them. Then it could monitor their progress and determine later if they are causing "undue delay" in the administration of the bankruptcy case. Alternatively, the parties could simultaneously work on an estimation protocol for the other 86 cases. If estimation is found to be appropriate, the estimating court would have the benefit of trial verdicts and the further discovery.

Importantly, fashioning a fair estimation protocol creates its own challenges and also may involve substantial delay and cost. There is more than a century's experience and developed history as to trial practice. Estimation is a far less developed process. Revealingly, the Debtor's only specific recommendation for estimation is to eliminate the jury on the unwarranted assumption that it alone causes "undue delay." All other details are omitted. As opposed to cutting out the heart of the Seventh Amendment altogether, plaintiffs might suggest reducing overall trial time and focusing more on cutting down on discovery. Here, two key issues are the plaintiff's abuse story in all cases and whether the Debtor had the requisite notice in cases filed by plaintiffs then over 26. The plaintiffs may propose to curtail defendants' third party discovery entirely and limit the time for each

plaintiff's deposition, particularly in cases of serial perpetrators. Defendants, who have claimed a need for more than one year per case for trial preparation (as compared to only 4-6 weeks per case for trial), likely will resist. As to the notice issue, which is a plaintiff's burden, the Debtor likely will want to curtail plaintiffs' discovery. Plaintiffs likely will counter that to reduce discovery in a particular case, the notice obligation must be presumed to be met. Defendants likely will disagree.

A court's decisions as to the estimation process – whether to save time by doing away with a jury or to make a presumption of notice for all subsequent incidences in serial perpetrator cases and deny third party discovery to 'test' the abuse stories therein -- may have an undue impact on the outcome of these cases making the court appropriately reluctant to act without expert testimony and reviewed studies and inclined to permit interlocutory appeals as to the estimation process rulings. How long it would take and how much it would cost to resolve the critical and difficult estimation process issues is uncertain. That uncertainty is a factor recommending against estimation.

Progress in the bankruptcy case is critical. As noted earlier in the case, the Debtor represents a 2000 year old institution that will exist long after this case is over. Survivors of sexual abuse, on the other hand, face their own mortality. Survivors are firm in their belief that state court jury trials will bring this chapter 11 to resolution, as trials have done for other Clergy Child Sex Abuse cases.

## IV.

## CONCLUSION

For all of the foregoing reasons, the Committee respectfully requests that the Court remand and / or abstain as to the Actions and for such other and further relief as the Court deems just.

Dated: August 13, 2007

PACHULSKI STANG ZIEHL YOUNG JONES
& WEINTRAUB LLP

By  /s/
James I. Stang (CA Bar No. 94435)
Robert B. Orgel (CA Bar No. 101875)
Counsel for Official Committee of
Unsecured Creditors

# EXHIBIT A

# EXHIBIT "A"

Title 28 U.S.C.A. § 157(b)(4) provides that "non-core proceedings under § 157(b)(2)(B) of title 28, U.S.C.A., shall not be subject to the mandatory abstention provisions of § 1334(c)(2)." These are the personal injury tort and wrongful death claims for liquidation and distribution, but not estimation for plan confirmation, excised from the definition of core proceedings as discussed previously. The apparent intent is that these personal injury claims should not be returned to the state courts for trial if they were pending there at the time the bankruptcy case was commenced. Furthermore, 28 U.S.C.A. § 157(b)(5) directs that personal injury claims be tried in the district court. The two sections put together pose a conflict of policy over the personal injury claim being tried in the district court or returned to the state court as a question of permissive abstention rather than mandatory abstention. The Sixth Circuit in In re White Motor Credit resolved this conflict by relying upon the statements of Senator Dole as allowing the court to first decide whether to leave the personal injury cases in the state courts where they were pending.[FN17] Only upon deciding against that choice is trial in the district court required. This was necessary to accommodate the circumstance of joinder with non-debtor parties who could not be transferred.

Aaron, Bankruptcy Law Fundamentals, section 3:14.

# PROOF OF SERVICE

STATE OF CALIFORNIA    )
                       )
COUNTY OF LOS ANGELES  )

I, Myra Kulick, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 11th Floor, Los Angeles, California 90067-4100.

On August 14, 2007, I caused to be served the Committee's **COMMITTEE'S <u>REPLY MEMORANDUM IN SUPPORT OF TORT LITIGANTS' REMAND AND/OR ABSTENTION MOTIONS – DEBTOR <u>IS</u> A DEFENDANT</u>** in this action by placing the original enclosed in sealed envelopes addressed as follows:

*See Attached Service List*

☑ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑ (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

☑ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown. The transmission was reported as complete and without error. (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☐ (BY PERSONAL SERVICE) By causing to be delivered by hand to the offices of the addressee(s).

☐ (BY OVERNIGHT DELIVERY) By sending by _____ to the addressee(s) as indicated on the attached list.

I declare that I am employed in the office of a member of the bar of this Court at whose direction was made.

Executed on August 14, 2007, at Los Angeles, California.

/s/ Myra Kulick
Myra Kulick

18479-002\DOCS_LA:170752.4

## Service List

**_Via U.S. Mail_**
Bankruptcy Administration
IKON
Financial Services
1738 Bass Road
P.O. Box 13708
Macon, GA 31208-3708

**_Via U.S. Mail_**
Dan McAllister
Treasurer-Tax Collector
Attn: Bankruptcy Desk
1600 Pacific Highway, Room 162
San Diego, California 92101

REPLY OF COMM. RE REMAND – DEBTOR IS A DEF.

18479-002\DOCS_LA:170752.4

## Service List

Susan L. Oliver
White & Oliver, APC
550 West C Street, Suite 950
San Diego, California 92101
Telephone: 619-239-0300
Facsimile: 619-239-0344
*Via email:* soliver@whiteoliver.com.

Maria C. Roberts
Shea Stokes, ALC
510 Market Street, Third Floor
San Diego, CA 92101-7025
Telephone: (619) 232-4261
Facsimile: (619) 232-4840
*Via email:* mroberts@sheastokes.com

Karen F. Landers
Best Best & Kriger, LLP
655 West Broadway, 15th Floor
San Diego, CA 92101
Telephone: (619) 525-1360
Facsimile: (619) 233-6118
*Via email:* Karen.landers@bbklaw.com

Dave Carothers
Carlton DiSante & Freudenberger LLP
4510 Executive Dr #300
San Diego, CA 92121
Tel: (858) 646-0007
Fax: (858) 646-0008
*Via Email:* dcarothers@cdflaborlaw.com

Lynne Lasry
Sandler Lasry et al LLP
402 W Broadway #1700
San Diego, CA 92101
Tel: (619) 235-5655
Fax: (619) 235-5648
*Via Email:* llasry@sllbv.com

18479-002\DOCS_LA:170555.1

## Email Distribution Service List

| | |
|---|---|
| Alonzo Wickers | alonzowickers@dwt.com |
| Andrea Leavitt | aleavitt@pacbell.net |
| Anthony Demarco | ademarco@kbla.com |
| Bennet Lord | blord@lordarchitecture.com |
| Celine M. Lewing | clewing@tclaw.net |
| Charlie Benbow | hepburnwest@aol.com |
| Christine E. Baur | Christine.e.baur@bakernet.com |
| Daska P. Babcock | dbabcock@schiffhardin.com |
| David Aveni | daveni@foley.com |
| David J. Molton | dmolton@brownrudnick.com |
| David Nye | davd@nps-law.com |
| Debra Riley | driley@allenmatkins.com |
| Donna | foccus@foccusinc.com |
| Edward Ross | ejr@rossandrubino.com |
| Gerald Kennedy | gpk@procopio.com |
| Geraldine A. Valdez | gav@procopio.com |
| Harold Fuson | hal.fuson@copleypress.com |
| Imperial County Tax Collector | taxcollector@imperialcounty.net |
| Irwin Zalkin | imz@zalkin.com |
| J. Mark Fisher | jfisher@schiffhardin.com |
| J.E. Holmes | jholmes@tclaw.net |
| James Hayes | jhayes@cwlawyers.com |
| James Hodges | Jim@jameswhodges.com |
| Jean Hurricane | jhurricane@schiffhardin.com |
| Jeffrey Anderson | jeff@andersonadvocates.com |
| Jeffry Davis | jadavis@mintz.com |
| John Manly | jmanly@manlymcguire.com |
| John Morrell | morrell@higgslaw.com |
| Jonathan Friedland | jfriedland@schiffhardin.com |
| Jordan Kroop | jkroop@ssd.com |
| Julie Marotta | jam@mezzettilaw.com |
| Karen Henry | karenhenry@dwt.com |
| Kasey Nye | knye@quarles.com |
| Katharine Demgen | kdemgen@schiffhardin.com |
| Katherine Freberg | kfreberg@freberglaw.com |
| Susanne Zimmerman | szimmerman@freberglaw.com |
| Kathy Frederiksen | kfrederiksen@manlymcguire.com |
| Katie Nameth | Katie@fknlaw.com |
| Keith Owens | kowens@foley.com |
| Laurence Drivon | abatare@comcast.net |
| Lori Winkelman | lwinkelman@quarles.com |
| Lyn Childress | lyn@permeco.com |
| Lynne Dorset | lynne@paradisepictures.com |
| M. Jean Starcevich | jstarcevich@pacbell.net |

18479-002\DOCS_LA:166779.1

| | |
|---|---|
| Margaret M. Mann 1 | mmann@hewm.com |
| Margaret M. Mann 2 | Margaret.Mann@hellerehrman.com |
| Mei Truong | mei.truong@otis.com |
| Michael Horton | mhorton@morganlewis.com |
| Michael Isaacs | misaacs@luce.com |
| Michael Margolf | mmargolf@mosscodilis.com |
| Michael McGrath | mmcgrath@mcrazlaw.com |
| Michael Zimmer | mz@zalkin.com |
| Michele M. Betti | mmb@rossandrubino.com |
| Pat Brown | pat.brown@decisionone.com |
| Patricia J. Fokuo | pfokuo@schiffhardin.com |
| R. Richard Farnell | rf@fknlaw.com |
| Rachel Steamer | ras@rossandrubino.com |
| Raymond Boucher | boucher@kbla.com |
| Rebecca Rhodes | rebeccarhoades@hotmail.com |
| Richard Kirk | richard@rancho.sdcoxmail.com |
| Rick Roquemore | rick@roquemoremg.com |
| Robert D. Buell | rbuell@luce.com |
| Robert L. Mezzetti II | rob@mezzettilaw.com |
| Robert M. Tobin | sjhlaw@aol.com |
| Ron Unger | r.unger@lawroom.com |
| Ronald E. Norman | rnorman@fknlaw.com |
| Ryan DiMaria | rdimaria@manlymcguire.com |
| Sara L. Chenetz | sara.chenetz@dlapiper.com |
| Shehnaz Bhujwala | bhujwala@kbla.com |
| Scott A. Wahrenbrock | scott.wahrenbrock@copleypress.com |
| Stephen Rubino | scr@rossandrubino.com |
| Steve Chipp | schipp@sahs.org |
| Steven C. Koppel | Steven.koppel@hellerehrman.com |
| Steven J. Katzman | Steven.jay.katzman@usdoj.gov |
| Susan G. Boswell | sboswell@quarles.com |
| Terry Giles | tg@oteam.com |
| Thomas J. Salerno | tsalerno@ssd.com |
| Tiffany L. Carroll | tiffany.l.carroll@usdoj.gov |
| Timothy C. Hale | tim@nps-law.com |
| Tomas Veale | tom.veale@tristargroup.com |
| Venus Soltan | soltan1@pacbell.net |
| Victor A. Vilaplana | vavilaplana@foley.com |
| Vince W. Finaldi | vfinaldi@manlymcguire.com |
| Wilfrid C. Lemann | blemann@inlandbusinesslaw.com |

## CASE - San Diego NON-Committee Plaintiffs Counsel

|  |  |
|---|---|
| Charles Geerhart | pglaw@mail.com; |
| Doris Cheng | dcheng@walkuplawoffice.com; |
| Elliot N. Kanter | ekanter1@san.rr.com; |
| Gregory G. Brown | gbrown@bc-llp.com; |
| J. Brian Campbell | jbcsoup@fastmail.fm; |
| Janet Binder Houts | Houtsclergy2@aol.com; |
| Jean M. Starcevich | jstarcevich@pacbell.net; |
| Jennifer L. Cutler | poswh@aol.com; jencutler@att.net; |
| Joseph G. Dicks<br>Stanley Tucci | jdicks@dicks-workmanlaw.com;<br>stucci@sjtlaw.com;<br>admin@dicks-workmanlaw.com; |
| Kenneth Sigelman | ken@sigelmanassociates.com;<br>susan@sigelmanassociates.com |
| Michael D. Meadows<br>Nick Casper | meadows@cmslaw.com;<br>ncasper@cmslaw.com; |
| R. Michael Lieberman | Michael@spark84.com;<br>rmliebermanlaw@yahoo.com; |
| Richard H. Schoenberger | rschoenberger@walkuplawoffice.com; |
| Sandra C. Bettocchi | sbetocchi@bc-llp.com; |
| Terry Singleton | terry@terrysingleton.com;<br>russ@terrysingleton.com;<br>secretary@terrysingleton.com; |
| William Light, Esq. | toddrash@pacbell.net |

DOCS_LA:167723.1